Case number four, and that case is United States v. Hibbett. Hi, Mr. Hillis. Judge Robner, it's nice to see you. So nice to see you. And your colleagues. With the beard, no less. I'm not allowed to do that. That's just what my wife says to shave when I see her tonight. But may it please the court. Counsel. My name is Daniel Hillis. I'm with the Federal Public Defender's Office. I represent Mr. Hibbett. He raises two issues on the appeal, and I'd like to begin with the systemic concern that we raised about the recordkeeping that is subject to the Rule 55 violation that we allege in the district court. So the Northern District has a local rule that tasks parties with the retention of exhibits. That's contrary to what Rule 55 requires. District courts are the repository of court records. That is because— Mr. Hillis, I mean, you made this argument, and it's kind of an interesting theoretical issue, but I have a host of problems with it being raised in this format, in this vehicle, one of them being I can't see what impact it had at all on your clients since you got the records, another being that this was never presented in any way to the district court, so here it is parachuting in on us, and a third being the fact that the integrity of the rules that the district court uses are the sort of thing that, you know, you take to the executive committee, you work with these rules. And there may be more, but those are my big three, I guess. So I'd appreciate your addressing them. All three good ones. I'll try to make sure I touch on them, but please redirect me if I miss anything. So first of all, if things are commonly seen, they may not be evident in their defects. And so for years and years, this local rule's been there in the district court. And in many district courts. I mean, I looked around, you know, somebody I was talking to about this said if there's a major city in the district, they have this rule. Yeah. I would feel better about the comfort in numbers idea if we're all using the rule correctly. But if the rule says that you're not allowed to do this, the fact that everybody is doing it that way makes me more concerned, not less. So strength in numbers doesn't mean much to me if everybody is doing something wrong. I would say that the rule says this is being done wrong. There is a separation of powers problem that's evident if the judiciary through the clerk's office is responsible as a neutral party for maintaining exhibits. And we are instead tasking parties, which in this case mostly means the government as the executive, is retaining the exhibits. Because when we reach out and try to get the document through the public right of inspection through the district court's clerk's office, we're told go ask the government. Now, as for whether we got this. I mean, if you don't happen to have been trial counsel and you couldn't. I almost never am. You know, I'm aware of that. No, no, no. That's OK. But the fact is trial counsel would sometimes pass it along to appellate counsel. You're absolutely right. And here, we would have an additional safeguard and feel better about how everything came in if the trial attorney in the district court level, Judge Wood, came back in the case. But the trial attorney was never brought back in on the case. So when the order goes out to, say, identify what the exhibit is and send it in, we only have the government speaking. We don't have defense attorneys saying in the district court level under federal rule of criminal procedure 10E, I think it is, that yes, this is the document. We agree. This is the video. We agree. And it goes back. Rather, the district court just receives a copy from the government and accepts it. No review by the district court even to say this is the same one. Incidentally. Is there any reason at all, aside from the bad person view of the world, that the documents that you received are anything but the documents that were in the case? I'm in a poor position to answer that because I wasn't in the district court when it was placed. And plus, where's the injury here? Well, the public grave inspection. It's a practical impact. That's kind of what I'm trying to get at. Yeah. Among other things. Just negligible. Before we express opinions about this, shouldn't we be hearing from the district court and the clerk? By all means. I don't see that they made any effort to intervene here. I think that they are content with the representations by the government to defend its interests here. But this is a problem that's going to go uncorrected. And so we do have an injury because there's a common law right of inspection of public records. We're supposed to be getting file stamp copies to ensure as defense attorneys that we know, right, trust but verify. How do we know? We got the copy directly from the clerk's office. But didn't you receive a true copy of the exhibit that was actually filed with the court? I received the copy that the government provided me, Judge. More than that, I cannot say. I'm not trying to disparage Ms. Chung. She's been excellent. So is Ms. Mavius who provided the copy. Problem is, we don't have a file stamp copy. Imagine if this is DNA evidence. If this is something else. These are very serious systemic concerns. You may say this is less so here because it's different evidence. But on the whole, we should require pursuant to Rule 55 that there is one record keeper and it is the court. You're coming to the wrong forum. You know, that you could file maybe mandamus or you could tell the Rules Committee that they need to clarify Federal Rule of Criminal Procedure 55. Oh, true. We could also ask the court to exercise it. That's exactly what I would think. You know, after six years in the Standing Committee, the committees are open for business on this sort of thing. And you'd get a full discussion instead of this highly speculative, you know, and I'm sure you don't mean personally to disparage anybody, but, you know, the integrity of the government's files is at issue here too. It's not an issue. It's just unknown that I have the copy that the court itself relied upon at sentencing and would know differently if it is a file stamp copy like it was a piece of paper and said this is the record I know because of the stamp. But you're going backwards in time. You know, we say a file stamp copy and we're slowly losing pieces of paper in the system anyway. We have EMSCF and we have, you know, everything. True. But they're labeled, Judge. That's how I know it's a record when I get it off the docket. Do you want to— But I may just say one last thing. Sure. Put all those things aside. Say that mandamus was a vehicle. Say that there was another vehicle. Right? The rules can be all true. But there's also the supervisory powers of the court that allow the court, even sua sponte, to jump in on this if they think— Only when we—I mean, we would never do that unless we thought there was some prejudice. And we'd have a war. I beg your pardon? We'd have a war with the district court. I'm not certain that you would. I don't see why there should be. With drugs, guns, and money? I'm only asking about documents. So if we were to say what the rules should be— Why? Why are you only talking about— Sure. I'll say. Because these are easily kept records. So if we're talking about physical evidence, we could have a different rule. Well, but we have one Rule 55, right? Which needs to be complied with here. And if we're to say that there are exceptions and there are reasons to exercise them, they would apply, perhaps, to CP, to guns, to physical evidence. But none of that is the case here. By and large, the exhibits that we get consist of documentary evidence and the occasional video. This is not hard. This is easy. As a matter of fact, for all the times the court has to issue orders and say, please, district court, court's office, include now the exhibit that was referred to and not part of the record, I hate to say cheekily that we are here to help, but we are here to help. Let's talk about— Because no longer do you have to get the order out. You have to tell the government to go ahead and submit or do anything else. This is all done easy peasy on the district court level. Now— Let's talk about this, sir. Let's. Is it— Please. The reckless flight? Inducement. Inducement. Inducement. So the reckless flight, we think, is pretty clearly a matter of government burden and accounting for the appropriate facts here in this case. And so— And the district court recognized this as an issue of fact, but he resolved it adversely to your client. You know, he said— Yes. You could see on the tape that when they make this right turn, you know, off they zoom, and by that time they know it's police who were in pursuit. Very true, Judge. But we look at the Hayes case from the Sixth Circuit. It says that you must know that they are police when you are counseling, inducing, encouraging, et cetera, the reckless flight. Well, that's what— That's what— Isn't that what the judge found, Judge Johnston? Well, if you look at page— First of all, I'm going to start with paragraph 17 of the PSR that describes what happened. And in paragraph 17, we don't have accounted for the keep going. The keep going is, according to paragraph 17, in our view, in our reading of it, that the lights have not been lit by the police. What about—look, we have an objective video that reveals that the chase or flight occurred immediately after the police lights were activated. Well, that's true, but— Right. So that with Holloman stating that Hibbert said keep going when a car was chasing them, or, you know, the PSR says during the flight. I mean, taken together, couldn't the district court properly conclude that when the statement by Hibbert telling her to keep going occurred when the police sought to pull them over? Well, Judge, just to disagree slightly because I must, paragraph— What? Yeah. Mr. Hillard. Paragraph 17 of the PSR describes what happened, and it's not based on the PSR or anything other than my client is concerned that they might be followed. It's an unmarked car. He doesn't know who's in it. He's had trouble in history with people before. He says to her keep going. She then speeds away. They activate their lights. That's all fine, but the crucial thing there is accounting for when was the phrase keep going uttered. Right, and he finds the sequence to be a bit different from the way you just articulated it. But if you even look, it's not accounted for. Ultimately, pages 27 through 29 of the appendix describes where he sets forth all the reasons for why the reckless flight, the enhancement should be imposed, but it's only at the tail end. He then says, and he said keep going, but it's not accounting for once you've adopted the PSR, which includes paragraph 17, that the sequence of events as laid out in the PSR is that keep going is said, then the lights go on. And so turning on your lights is a pretty good signal that somebody is the police, right, flashing a badge. I read the district court as saying I'm not taking any particular version of this as gospel, but particularly with the site to the Lubman case out of the Fifth Circuit and the lack of any other apparent motive for the driver to flee here than the fact that Mr. Hibbett had a gun with him. Put all that together and it seems like a not unreasonable inference. Well, by implication almost that the driver was under duress, that was never established. The district court shouldn't speculate that these two people who know each other, one of them having a gun and not knowing at first who the vehicle is behind them, that she wouldn't have any reason to be concerned for her safety, et cetera. There's nothing to suggest duress between these two friends. They could have brought in the witness and testified. That would have been terrific. If Ms. Holloman was brought in, I understand she's deceased now, so that is not a possibility. But again, the burden was on the government and if the sequence of events show a stop, a concern that you're being followed, you say keep going, as my client says to the driver, he's the passenger, and the driver goes, then the lights go on. We don't have the inducement, encouragement, et cetera, under 3.1.2c, I think I got that correct, that is necessary under Hays. The sequence is important and if saying keep going occurs before the lights go on, I don't think the government's met its burden. If nothing else, thank you. Thank you, Mr. Phyllis. Ms. Chung. Hello. Hello. Good morning, your honors, and may it please the court. Ashley Chung on behalf of the United States. This court should affirm the district court's judgment and sentence. And starting where defense counsel left off, here the district court did not clearly err in finding that the defendant induced the driver to flee from the police, knowing that it was law enforcement behind them. But look, given the lack of certainty as to whether Hibbitt instructed her to keep going after the car activated its police lights, what evidence is there of encouragement or inducement that occurred after they were aware that it was a police car? Your honor, I think here the record speaks to substantial circumstantial evidence that there was inducement and counseling that occurred when the defendant knew that it was law enforcement following behind. So first of all, the district court made these factual findings, including that the car took off. The district court also found that contrary to the driver's claim in the recorded jail calls, that she and the defendant knew that it was police that was following behind them because the lights were on, as opposed to her claim that, in fact, the lights had always been off. The court also found that the defendant had an illegal gun in his lap while the driver was driving, found that the defendant had a history, I think referred to it almost a fleeing from law enforcement. And the court specifically found, and this is at government's appendix 52, defendant was the one that told the driver to flee, to get going, to keep going. Yeah, but the prospect of Hibbitt being charged as a felon in possession, well, might have attributed to him. Isn't it just as plausible that she did not want him arrested for her own personal reasons? I think that's a permissible, another permissible inference that could be drawn from the record. But where there are multiple permissible inferences that are supported by the record, the district court choosing one over the other does not amount to clear error. And here, going back to the record, in addition to the defendant having the gun out on his lap while the driver was driving, there's also the ATF special agent's testimony as he was testifying about the call. And this was in response to a specific question from the district judge that the defendant told the driver to basically keep driving and get away from the people chasing them. And that was in response to the court's question of what, if anything, did the driver say on the jail call about what the defendant told her while she was driving. So while there may be some, there isn't a specific finding in terms of the sequence of events and the sequence of when someone said keep going or might have also repeated keep going later on, here there was certainly enough evidence in the record for the district judge to reasonably infer that it was more likely than not that the defendant induced the driver to flee knowing that it was from police. Well, and it's that last part of it. It's knowing that it was the police. Now, if some rival was behind them trying to chase them down, some private party, this wouldn't, this enhancement would not be proper. That's correct, Your Honor. And I think the district court explicitly recognized that below during the sentencing hearing and also then referred to it when it cited to the Lugman case from the Fifth Circuit as having very similar facts. So unless there are other questions with respect to the guidelines enhancement, I'd like to turn to the other issue up on appeal. And here the government submits that this court lacks jurisdiction to address the defendant's complaint with the clerk's office for all of the reasons I think that the panel raised in its questioning to defense counsel. I think here perhaps starting with the standing issue, we don't have an injury in fact here. As this panel properly noted earlier, here not only did the defendant already have these video exhibits down below through discovery as was confirmed on the record at sentencing, but then once again at the time that his case came up on appeal and exactly as the local rules contemplated, a public counsel here was able to obtain a copy of the exhibits from government counsel and proceed with this. So why don't you stamp them? Honestly, Your Honor, actually with video exhibits, the way that the process now works is that digital evidence submitted to the Northern District of Illinois is submitted through a website portal. And so it gets uploaded electronically. And then it's actually apparent on the docket now in the district court case since the district court granted the government's motion to supplement the record. The process is then that you can contact the district court and request a copy of the electronic exhibits. And once you pay whatever fees may be applicable, you get essentially a link to download it. So there's not an indication necessarily that it would be file stamped in the formal sense, but it would be coming directly from the clerk's office. So I think as this panel alluded to in its questioning, file stamping itself is, I think, not a thing of the past certainly, but something that applies more when it comes to documentary exhibits as opposed to digital evidence here. I would assume that on those issues, the press would be pretty interested, set of parties. Yes. Yes. I think that's true, Your Honor. And certainly the case law and authority that exists relative to the access to exhibits in many instances deal with the right of the press. But I think importantly, the case law states that the right to inspect, access, and copy judicial records is not absolute. And that's in the Nixon case from the Supreme Court. That Supreme Court went on to explain that the few cases that have recognized such a decision as to access is one best left to the sound discretion of the trial court in light of the facts and circumstances of the particular case. And so, for example, in the Nixon case, the district court had said that it would retain custody of various tape recordings until after the trial was concluded. And the Supreme Court said that that was a decision that was within the discretion of the trial court to make. I think that's precisely what Local Rule 79.1 allows for here. It sets the district court up as the gatekeeper for what's going to be made part of the record both in the district court proceedings as well as on appeal. So can I ask you, as you understand Local Rule 79.1, would predecessor defense counsel have had an obligation to retain these exhibits? I think not under 79.1. And I would expect that there would be some sort of ethical rule that would have any defense counsel responsibly maintaining records for his counsel so long as they may be necessary. So even if you're not still representing the person, would you think that would encompass just a change of counsel on appeal, which happens all the time? I think there may be some other rule, but 79.1, I think, does not put that responsibility on defense counsel. The responsibility to maintain the exhibits and hold them in custody lies with the party that produces the exhibits in the first place. And so here, it's the government because the government was the one that provided and submitted the government's exhibit A and B to the district court. In a different case, if a defendant were to present exhibits, then it would be defense counsel's responsibility. And in civil cases, it would rest with whatever party happened to introduce those exhibits. And I think in that way, the rule also contemplates that it's going to be the party who relies on those exhibits, who introduces them into evidence, who then has to bear the responsibility of maintaining them. Or if they fail to do so, would then bear any consequences or fall out for violating their rights. So if the press came to you, the U.S. Attorney's Office, and said, we want to see the exhibits, what would happen? So I actually, in speaking with our office's press representative, I understand that requests from the press are relatively common, particularly in high-profile cases. And as a matter of practice, the practice of the U.S. Attorney's Office, at least in our district, is to make the court, the district judge, aware of the request to indicate that the government has no opposition to the request. And then assuming that the district court also says that they have no issue or don't want to place any restrictions, to then promptly provide any exhibits that were used in a proceeding or already introduced into evidence to a press who requests it. Thank you. And so here, in addition to the lack of standing, so the fact that defendant has no injury and any injury that may exist is not fairly traceable to the government, I think as the panel noted previously, here there's also no underlying district court decision or proceeding that's subject to a pallet review under 1291. So I think for all the reasons discussed today, as well as the reasons set forth in our brief, this issue is not properly before the court in this appeal. And unless the panel has any further questions, we'd simply ask this court to affirm the district court's judgment and sentence. Thank you, Ms. Chung. Thank you. You used up all your time, Mr. Hillis, but come on up. You've come such a long way. You asked for two minutes. Did that do it? Thank you. So in no particular order, prior defense counsel doesn't always keep exhibits and they don't always respond to appellate counsel's request. We can avoid any problems on that end if we can just get everything that we need through the clerk's office. I understood the government just to explain how the clerk's office does have a procedure to upload materials and keep them. Therefore, it should be keeping them now and making them available. That's not happening. And so the Rule 55 violation to us seems fairly obvious. And under Nixon, as the government mentioned in the Nixon case, what ground would allow the district court to deny defense counsel, especially appellate counsel, access to records or the defense counsel defendant access to exhibits that were relied on by the district court to impose sentence? But you weren't denied access, though. I mean, you got the access immediately upon request. I never got the file stamp copy, Judge, which is the official court record that should be provided. But as John was just explaining, there is no such thing with all of these uploads and links and stuff. There's no file stamp. But there is. Yes. I disagree. Only because if I am in the district court and I have a video and there's a sentencing judge, I would say to the judge, here's a copy. I'm providing defense counsel a copy as well. I ask it be marked as exhibit so-and-so retained by the court. Play the video. Now the copy is in the record. That's it. It's not hard. And it should be done. And so then we all know, as the appellate lawyer, as the appellate panel, that we're receiving the real McCoy. Not to disparage, not to cast doubt, but this is how you know because it's done this way as a matter of practice and rule. So as for injury, injury is presumptive. You have public right of inspection. The court is supposed to contemporaneously make the materials available. It didn't. Standing, as a person who's injured, public right of inspection, you have an injury jurisdiction. Once there is an order and the order contemplates the sentence, the sentence in turn contemplates the evidence under Berman, the Supreme Court case, that judgment reflects something that can now be appealed not just to the decision but also to the records that were relied upon by the district court. And then, very last thing, the government still in its explanation of what happened below does not account for, does not adequately account for, pursuant to its burden, the timing of the events and the necessary and important part about keep going. If it occurred after the lights went on or before the lights went on is the essential question. And if the evidence in paragraph 17 of the PSR says it preceded the lights being indicated that under Hayes, my client doesn't know that they're police and the enhancement shouldn't be imposed. Thank you. Thank you. Thank you so much, Mr. Hillis. And thank you so much, Ms. Chung. And cases will be taken under advisement. And don't ever forget that Mr. Hillis did not mean that to be personal. I certainly don't. Okay. Bye. Okay.